On the 1st of May, certain creditors of the bankrupts took an appeal to the superior court, from the judgment of the court of ordinary, on the ground that the property set apart was of greater value than that placed upon it by the appraisers and approved by the court of ordinary. On the 6th day of May, 1872, and while the appeal was pending, proceedings were instituted against the said Moseley, Wells & Co., by their creditors, on which they were duly adjudged involuntary bankrupts on the 6th of June, 1873. The counsel for the creditors contended that on the filing of the petition in involuntary bankruptcy, the jurisdiction of the state courts over the proceedings then pending by virtue of the state statute, in regard to homesteads and exemptions, ceased, on the ground that the proceedings therein had not been concluded. This view was overruled by Judge Erskine, on the ground that "when the court of ordinary rendered its decisions on the homestead proceedings, the judgments were binding and operative, if no appeals had been taken to the superior court." By the local law of the state of Georgia, an appeal does not vacate, but only suspends, the judgment of the court appealed from. The judgment of the court of ordinary was still the judgment of a court of competent jurisdiction, and would remain so, unless overruled by the superior court, to which an appeal had been taken. The United States district court, therefore, merely instructed the assignee in bankruptcy to apply to the superior court, to which the appeals had been taken, for leave to be made a party to the proceedings there pending, on the appeals from the court of ordinary of Lowndes county, and there defend the rights of the creditors. Here, it seems to me to be distinctly and clearly held, that where the homestead has been laid off and allotted by competent authority, under the state law, "the amount" of it thus ascertained and fixed is "the amount" to which such debtor is afterwards entitled under the bankrupt law, when he seeks to avail himself of its benefits, or when he is adjudged an involuntary bankrupt on petition of his creditors.

In discussing the general question of homestead exemptions, in Re Vogler [Case No. 16,-986], though the point was not directly raised, his honor, Judge Dick, said: "Where homesteads have been duly allotted under the state law, and there is no fraud, such allotment will be recognized and allowed to bankrupts under the bankrupt act." In view of the reasoning from the facts and law of the case, and the authorities cited, I am of opinion that the exceptions filed to the assignee's report of exempted property should be overruled.

Charles Price, for certain creditors.
Luke Blackmer, for bankrupt.

---

## Case No. 5,922.

### In re HALL.

[2 N. B. R. 192 (Quarto, 68); [1] 16 Pittsb. Leg. J. 52.]

District Court, N. D. New York. 1868.

BANKRUPTCY— NOTICE OF MEETING OF CREDITORS —IRREGULARITY IN WARRANT OF REGISTER.

An omission to publish notice of the first meeting of creditors to prove their debts, in one of the papers designated for that purpose, also a

---

[1] [Reprinted from 2 N. B. R. 192 (Quarto, 68), by permission.]

failure to state in the warrant the names, residences and amounts of the debts of creditors, and the false return of the messenger, are sufficient irregularities to set aside the proceedings before had.

[Cited in Re Archenbrown, Case No. 504.]

In bankruptcy.

HALL, District Judge. The discharge of the bankrupt in this case was not opposed; but upon the hearing of the application therefor, under the usual order for creditors to show cause, it was stated by the counsel for the bankrupt that it had been discovered that the notice of the first meeting of creditors to prove their debts and choose an assignee had not been published in one of the newspapers designated for that purpose in the warrant issued by the register, and that he was not aware of the fact until just prior to the hearing upon the application for a discharge. It was stated that the return of the messenger set forth that such notice had been duly published; but as it was conceded that this return was false, and that the notice had never been published in one of the papers designated, this fact must be considered as properly before the court. As this was the notice required by statute, in order to give to creditors and others in interest notice of the pendency of the bankrupt's petition, the omission to publish such notice is such an irregularity as cannot be disregarded. The creditors have not had the notice the statute requires to be given them, that they may take measures for the protection of their interests, and it cannot therefore be decreed that all the requirements of the law have been conformed to by the bankrupt. It was his duty, or that of his attorney, to see that these notices were published; or at least to see that a proper affidavit of such publication was before the register, before the appointment of an assignee.

On looking into the papers it appears that the warrant first issued by the register, and which ought to have contained a list of the creditors of the bankrupt, with their respective places of residence, and the amount of their respective debts, with directions to serve a notice containing such list and statements upon each of such creditors, contained no list of creditors; but in lieu thereof, such warrant contained a statement that "the names of creditors in the schedule annexed to the duplicate copy of the petition of said bankrupt could not be read." If this were true the obvious course for the register to pursue was to decline to issue any warrant until a proper and legible copy of the petition was furnished; and it is not surprising that a case in which so gross an irregularity was allowed to occur, almost at its very inception, should exhibit other inexcusable blunders. The next of these is found in the messenger's return to this warrant, which states that the publication of the notices in the two papers in which it was directed to be published, although, as before stated, it

is now conceded that it had been published in only one of them. It is clear that the messenger could have had no proof of the publication, and, though bound by the express terms of his official oath to make true return to his warrant, he made a return not warranted by the facts—probably without taking any measures to ascertain whether it was true or false. Subsequently the schedule of the bankrupt was amended by inserting a statement of debts which had been previously omitted because they were barred by the New York statute of limitations, and thereupon a new warrant was issued directing service, by mail, of notice of an adjourned meeting of creditors, but not directing any publication of notice of such meeting; and it was under these notices that the meeting to choose an assignee, &c., was held.

The proceedings under the first warrant, and indeed the issuing of such a warrant, was a gross and palpable blunder, and one which ordinary care and a reasonable observance of the general orders in bankruptcy and the general rules in bankruptcy adopted by this court would have prevented. The fourteenth general order requires all petitions, and the schedules therewith, to be printed or written out plainly; and the third rule in bankruptcy adopted by this court, requires that all papers filed in proceedings in bankruptcy shall be written in a fair and legible hand, or else printed; and there was, therefore, no possible excuse for filing with the register a paper which could not be read. The twenty-eighth general rule of this court in bankruptcy, as amended, requires that due proofs of the publication of the notices directed by the warrant be furnished to the messenger, and filed with the papers or proceedings to which they related,—that is, with the warrant and return. If this requirement had been regarded, the neglect of the messenger in failing to procure the due publication of the notice would have been discovered, and the meeting could have then been adjourned, and a new notice given as required by the twelfth section of the bankrupt act; and no other delay or unnecessary expense would have been incurred. As the case now stands, most of the proceedings already had must be set aside, and the same proceedings had with due regularity; and the party must be careful to renew his application for a discharge within the year from the adjudication in bankruptcy.