In re Friedrich–Wilhelm METZELER, as Trustee in Bankruptcy for Uni–Petrol Gesellschaft fuer Mineralolprodukte m.b.H. a German limited liability company.

Friedrich–Wilhelm METZELER, Trustee, Petitioner,

v.

BOUCHARD TRANSPORTATION CO., INC., Respondent.

Bankruptcy No. 85 B 11183.

United States Bankruptcy Court, S.D. New York.

Sept. 11, 1987.

Hughes Hubbard & Reed, New York City by Thomas D. Goldberg, for petitioner.

Beck, Halberg & Williamson, New York City by Herbert B. Halberg, for respondent.

## DECISION and ORDER

### HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Respondent Bouchard Transportation Co., Inc. ("Bouchard") seeks an order pursuant to Rule 7012(b) of the Rules of Bankruptcy Procedures and Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing the amended petition brought by the Trustee of Uni-Petrol Geselleschaft fur Mineralolprodukte mbH ("Uni-Petrol") pursuant to § 304 of the Bankruptcy Code, 11 U.S.C. § 304, (1986) (the "Petition"), to recover allegedly preferential and fraudulent transfers made by Uni-Petrol to Bouchard immediately before Uni-Petrol commenced bankruptcy proceedings in Germany on July 24, 1984. The Petition was filed after this Court's decision, 66 B.R. 977, permitting a limited amendment of the original § 304 petition.

## I.

Assuming that the actual allegations of the Petition are true for purposes of the motion, *e.g., Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), we turn to its recitals. There it is alleged that on July 24, 1984 Mr. Georg Wolfgramm, as managing director with sole power of representation of Uni-Petrol, applied for the institution of bankruptcy proceedings of Uni-Petrol. On the same day, the Amtsgericht Dusseldorf opened the bankruptcy proceedings. It appointed Friedrich—Wilhelm Metzeler as the Trustee in Bankruptcy ("Trustee" or "Metzeler").

As trustee, he alleges that Uni-Petrol made preferential and fraudulent transfers totalling $580,952.64 to Bouchard when it made three payments by wire transfer from a West German bank to Bouchard's account at a New York bank at a time when Uni-Petrol was insolvent.

It is further alleged that these transfers were made with actual intent to hinder, delay and/or defraud other creditors of Uni-Petrol, as evidenced by the timing of the payments, the size of the July 20, 1984 payment of $446,745.86, more than twice the amount of any previous payment by Uni-Petrol to Bouchard, payment of invoices were addressed to a separate American corporation, Uni-Petrol, Inc., the long overdue status of many of the invoices, and payment for some services for which invoices had not yet been received. It is therefore asserted that the three transfers are voidable under 11 U.S.C. §§ 547, 548 and 550 and under sections 28–48 of the Konkursordnung (German Bankruptcy Act) of February 10, 1877, as amended.[1]

In support of its claim under § 304, it is alleged, for each transfer, that the granting of relief requiring the return of the transferred sums will "assure the economical and expeditious administration of the estate of Uni-Petrol" in accord with the factors enumerated in § 304(c) by (i) pre-

---

1. For further discussion of the petitioner's allegations, *see* 66 B.R. at 979.

venting "Bouchard from retaining a fraudulent and preferential transfer" (ii) enabling allocation of those transfers pursuant to priorities prescribed by West German law which is said to be substantially in accordance with the order prescribed by the Bankruptcy Code, (iii) promoting comity and (iv) not prejudicing or inconveniencing American claimholders in the United States who have asserted claims in the Uni-Petrol proceeding. Petition ¶'s 12, 19, 25. Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1334, 157 and venue is claimed pursuant to 28 U.S.C. § 1410. Nowhere is it asserted that Uni-Petrol has leviable property in the United States.

## II.

In order to implement the long standing policy of this country in extending comity to foreign bankruptcy proceedings, Congress enacted § 304 to allow "foreign bankrupts to prevent piecemeal distribution of assets in this country by filing ancillary proceedings in domestic bankruptcy courts." *Victrix Steamship Co. v. Salen Dry Cargo, A.B.*, 825 F.2d 709, (2d Cir. 1987); *accord, Cunard Steamship Co. v. Salen Reefer Services, A.B.*, 773 F.2d 452, 454–55 (2d Cir.1985). Pursuant to § 304(b), the Court is vested with discretion, subject to the provisions of § 304(c), to

(1) enjoin the commencement or continuation of

(a) any action against—

(i) a debtor with respect to property involved in such foreign proceeding; or

(ii) such property; or

(b) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;

(2) order turnover of the property of such estate, or the proceeds of such property to such foreign representative; or

(3) order other appropriate relief.

11 U.S.C. § 304(b). In exercising that discretion, the court, under § 304(c), is to "be guided by" the economical and expeditious administration of such estates consistent with:

"(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the proceeding of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns."

11 U.S.C. § 304(c).

On this motion in light of the facts pleaded, two sets of issues have emerged: (i) whether the Petition pleads a cause of action and (ii), if it does, whether it may be maintained under § 304.

## III.

The first of these issues involves, in turn, whether representative of a foreign bankruptcy estate may maintain causes of action pursuant to the preference and fraudulent transfer sections of the Bankruptcy Code or is limited to those granted by foreign law. In *In re Comstat Consulting Services, Ltd.*, 10 B.R. 134 (Bankr.S.D.Fla. 1981) the court assumed that United States law applied. That assumption was upheld in *In re Egeria Societa Per Azioni Di Navigazione*, 26 B.R. 494 (Bankr.E.D.Va. 1983) where the court applied § 547 of the Bankruptcy Code and relied on the reference to "preferential or fraudulent dispositions of such estate" contained in § 304(c)(3) as its authority to do so.[2]

These results have been criticized:

---

**2.** In *Matter of Culmer,* 25 B.R. 621 (Bankr.S.D. N.Y.1982) it was stated *in dicta* that "it has always been contemplated that United States

ancillary proceedings might be used by foreign liquidators to avoid American preferences and protect assets for foreign administration. *See*

"With respect to the exercise of avoidance powers, the foreign representative should be limited to the powers available under the Laws of the State where the foreign proceeding is pending. The section 304 court's tasks should be to assist implementation of the foreign court's decrees (when not contrary to fundamental domestic policies), not to provide the foreign representative with the benefit of American avoidance powers, which may be better (from a debtor's perspective) than those available in the foreign court."

R.A. Gitlin and E.D. Flaschen, *"The International Void in the Law of Multinational Bankruptcies"*, 42 Business Lawyer, 307, 319 (1987). To proceed on the basis of United States law is also inconsistent with the overall purpose of § 304: to afford comity through ancillary administration. It is not the purpose of § 304 to determine the nature of an estate involved in a foreign proceeding. Those parameters are left to foreign law that creates the avoidance powers granted to a trustee. *Cf. Matter of Toga Manufacturing, Inc.*, 28 B.R. 165, 167 (Bankr.E.D.Mich.1983). Section 304(c) serves to constrain the exercise of those powers in view of other considerations of fairness.

■ Moreover, neither § 547 nor § 548 contains any indication that the avoidance powers contained therein are to be vested in a foreign representative. Both statutes speak of enabling "The trustee" to exercise those powers of § 547(b), § 548(a). These references plainly refer to a trustee appointed under §§ 701, 702, 703, 1104, 1163 and 1302 and to debtors-in-possession under § 1107(a). We thus hold that a foreign representative may assert, under § 304, only those avoiding powers vested in him by the law applicable to the foreign estate. Had Congress desired to vest a foreign representative with those domestic powers, it would have said so directly.[3]

■ Here, the German Bankruptcy Act provides a liquidator of a bankrupt estate with limited powers to avoid certain transactions conducted by the debtor before the proceedings are opened. Section 36 of the German Bankruptcy Act states that "authority to exercise the right of avoidance lies with the Trustee." Elsing Aff. at 5. Section 37(1) provides that "everything alienated, given away or surrendered by the avoidable act from the property of the bankruptcy estate shall be restored to the bankrupt's estate." *Id.* There are two general requirements for an avoidance action by a Trustee as interpreted by the German courts: (1) the transaction must be a "legal act" and (2) the "legal act" must have resulted in disadvantage to the creditors. Elsing Aff. at 5. As noted by Metzeler, these two requirements are met since the money transfers to Bouchard alleged to be "legal acts," and Uni-Petrol's creditors are alleged to have been disadvantaged since the funds transferred would have been at the disposal of the Trustee if the payments had not been made.

None of this is truly disputed by Bouchard. Instead it observes that Section 41(1) of the German Bankruptcy Code contains a one year statute of limitations, providing that "avoidance is admitted only within one year after the bankruptcy proceedings were initiated." Elsing Aff. at 5. To satisfy the statute, an action must be commenced seeking restitution by avoidance of the payments within one year from the commencement of the bankruptcy. Jurius Aff. at 9. Bouchard, therefore, contends that a claim brought under 11 U.S.C. § 304 in United States court is insufficient to halt the limitation period of one year, claiming that the purpose of § 304 is to

*Banque de Financement v. First National Bank of Boston,* 568 F.2d 911 (2d Cir.1977)." *Id.* at 633. Neither *Culmer* nor *Banque de Financement* involved the present issue of whether § 547 and § 548 of the Bankruptcy Code or their predecessors apply to foreign bankruptcy proceedings.

3. Having held that foreign substantive law governs the avoiding powers of a foreign representative, we need not address Bouchard's claim that the petition referred to in § 547 is the § 304 petition and that the transfers must have occurred within 90 days of its filing, rather than the commencement of the foreign bankruptcy proceeding.

prevent dismemberment rather than effect restitution.

Although this assertion has appeal in view of the statements of § 304 policy contained in *Victrix* and *Cunard*, this Court, in *In re Gee*, 53 B.R. 891, 898–89 (Bankr.S. D.N.Y.1985), has held that, in the proper circumstances, the court, pursuant to the "other appropriate relief" clause of § 304(b)(3), could grant a § 304 petition seeking to discover, and presumably bring, a cause of action for fraudulent transfer. *See also Angelo v. Kedzep*, 29 B.R. 417 (S.D.Tex.1983); *In re Trakman*, 33 B.R. 780 (Bankr.S.D.N.Y.1983).

This notion that § 304 contemplates more than mere prevention is, moreover, supported by 28 U.S.C. § 1410 which governs venue for ancillary proceedings. In addition to providing venue for preventive actions, namely actions seeking injunctions barring the continuation of lawsuits, enforcement of judgments, and actions to enjoin the enforcement of a lien, Congress enacted § 1410(b) providing venue for actions to require the turnover of property of the estate. We thus conclude that the bringing of the original § 304 petition within one year of the filing of the foreign bankruptcy provision satisfied the West German statutory requirement that a restitution action be brought within one year.

### IV.

■ This is not to say that the Petition itself can be maintained under §.304. That issue involves consideration of whether a liquidator of a foreign estate can bring a § 304 Petition when it has no bank account or other leviable property in the United States or the district. Most of the cases that have sustained § 304 petitions asserting preference or fraudulent transfer actions, *Comstat Consulting, Egeria Societa,* or seeking discovery of same, *Angelo, Gee,* involved foreign estates having such property in the United States. In *Matter of Stuppel*, 17 B.R. 413 (S.D.Fla.1981), the district court stated that an allegation of fraudulent transfer of property in the United States satisfies "the Section 304 requirement of property 'involved in' the foreign

proceeding." 17 B.R. at 415. Conversely, no case called to our attention or that we have been able to find has rejected a § 304 petition by reason of the absence of such property.

In claiming that the Petition may not be sustained, Bouchard makes two principal arguments. First, it relies on the requirement of § 109(a) that a debtor have its domicile, a place of business or property in the United States. Alternatively, it asserts that § 304 may not be used to avoid preferential or fraudulent transfers in the absence of some property here.

It is conceded that Uni-Petrol was not domiciled in, had no place of business in, and had no tangible property in the United States. Only the transferred sums are here. In claiming that a cause of action to return them cannot satisfy the property requirement, Bouchard relies on *In re Berthoud*, 231 F. 529 (S.D.N.Y.1916) and *In re San Antonio Land & Irrigation Co.*, 228 F. 984 (S.D.N.Y.1916). There it was held that the property requirement of § 2(a) of the former Bankruptcy Act contemplated property subject to attachment. This reliance is untoward. *Berthoud* and *San Antonio Land* did not purport to set the outer limits of a definition of property under the former Bankruptcy Act. More importantly, Congress changed the concept of property in enacting § 541(a) of the Bankruptcy Code to "include in the estate any property made available to the estate by other provisions of the Bankruptcy Code." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). These include those sections that "permit the trustee to demand the turnover of property that is in the possession of others if that possession is due to a custodial arrangement, § 543, to a preferential transfer, § 547, or to a fraudulent transfer, § 548." *Id.* at 205, n. 10, 103 S.Ct. at 2314 n. 10. Section 109(a) must be accordingly interpreted to include such property.

In addition, 28 U.S.C. § 1410(b) (1984) in its provision of venue for cases under § 304 seeking turnover of estate property confirms that Congress anticipated that

§ 304 could be used to bring actions seeking the turnover of property. Since this provision was enacted after the Supreme Court's description, in *Whiting Pools,* of preference and fraudulent transfer actions as turnover actions, 462 U.S. at 205, n. 10, it appears that Congress contemplated that those actions, as well as the turnover section, § 542, are in the scope of § 304.

Strongly reinforcing the conclusion that foreign representatives may bring a § 304 petition for the purpose of bringing preference and fraudulent transfer actions based on foreign law to recover property located here is the policy behind § 304 itself. On this motion, Bouchard does not contend that sustaining the § 304 petition would offend comity considerations. Such considerations might enable the Trustee to bring a suit under the diversity jurisdiction of the district court. But Congress' having codified the fairness factors to be considered by the bankruptcy court in § 304, supports the notion that the other appropriate relief clause of § 304(b)(3) is to be broadly construed so that the fairness factors of § 304(c) will generally apply.

To this is to be added the concern that Congress is not to be presumed to have legislatively overturned precedent under the former Bankruptcy Act but rather, in cases where the statutory language is unclear, to have acted in light of judicial precedent. *Midlantic National Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). In *Banque de Financement v. First National Bank of Boston,* 568 F.2d 911 (2d Cir.1977), the Second Circuit ruled that a bankruptcy case brought by a foreign representative in order to avoid preferential transfers is not to be lightly dismissed and that considerations of equal treatment to the members of each class require flexibility in assessing a debtor's failure to file a list of creditors due to Swiss banking law prohibitions, 568

F.2d at 911, 919. In so ruling, the court overturned the holding of both the bankruptcy and district courts that the rights of local creditors to local property through levy on foreign assets are to be protected prior to subjecting such property to administration in a foreign proceeding. The court employed the policy of equality that avoidance of preferences and fraudulent transfers is designed to achieve in construing § 2(a)(22) of the former Bankruptcy Act. It ruled:

> Section 2a(22) was not intended to be the instrument by which jurisdiction over a foreign domiciliary grounded in § 2a(1) could be undercut for the purpose of validating preferential transfers to United States nationals. Section 2a(22) was enacted as an administrative reform. It was designed to avoid needless duplication of effort by courts and creditors in those cases where an ancillary proceeding in this country could be coordinated with or entirely dismissed in favor of a domiciliary proceeding abroad. *See* S.Rep. No. 1954, 87th Cong., 2d Sess. (1962), reprinted in [1962] U.S.Code Cong., & Ad.News 2603; H.R.Rep. No. 1208, 87th Cong. 1st Sess. (1961). The construction of local "rights" most consonant with this objective was suggested by Professor Nadelmann nearly thirty years ago. In exercising its discretion the district court is to guard against forcing American creditors to participate in foreign proceedings in which their claims will be treated in some manner inimical to this country's policy of equality.

568 F.2d at 921 (citations omitted).[4] The factors stated in § 304(c) implement the line drawn and policy articulated in *Banque de Financement.* We doubt that Congress meant to denigrate that policy by limiting § 304 to exclude preferences and fraudulent transfer actions in the absence of tangible property in the United States and to subject the national policy of afford-

---

**4.** This modern construction of the "local rights" doctrine to require substantial compliance with the policy of equality of treatment among classes answers the contention by the Commission on the Bankruptcy Laws of the United States that the doctrine bars foreign trustees

from defeating the rights of local creditors acquired by levy on local property apparently without regard to consideration of equal treatment. II *Report of the Commission on the Bankruptcy Laws of the United States* 70–71, H.R. Doc. # 93–137, Part II (1973).

ing assistance to foreign bankruptcy proceedings to the comity doctrines of the several states.[5]

Notwithstanding these concerns, Bouchard argues that had Congress intended to enable a § 304 petitioner to bring avoidance actions, it would have said so rather than employ the phrase "prevention of preferential and fraudulent dispositions of property of such estate" in § 304(c)(3). It further observes that in *In re Gee*, Judge Brozman stated that "it may not be appropriate in every case to allow a 304 petition solely for the purpose of discovery if there is no property in the United States involved in the foreign proceeding...." 53 B.R. at 899.

As to the first of these assertions, the literal wording of the statute in referring to prevention of preferential and fraudulent transfers makes little sense if it is to be interpreted to include only transfers that might occur after the § 304 petition is filed. The filing of a § 304 petition does not vest the court with immediate control over the debtor's property and thereby stop the ability to make transfers in the United States. Only after trial, failure to file an answer or motion for summary judgment, *In re Culmer*, 25 B.R. 621, 624 (Bankr.S.D. N.Y.1982), can the court order relief. § 304(b). Preferences and fraudulent transfers are thus avoidable only if the foreign representative can reach back under § 304.

Rather than read § 304(c)(3) out of the statute, it is appropriate to construe it to include the *Whiting Pools* notion that property transferred preferentially or fraudulently is part of the estate and to recognize that the word "prevention" is a somewhat arcane reference to the notion that such property will be lost unless recovered. In that light the statute makes sense. So construed, it supports the § 304 petition here.

As to Judge Brozman's statement in *Gee*, discovery is not the same as the presence of preferentially or fraudulently transferred property. Furthermore, Judge Brozman's statement is to be viewed in relation to 28 U.S.C. § 1410. As noted, § 1410(b) provides for venue for a turnover action in the district where the property is found. For other cases where no injunction is sought, § 1410(c) places venue in the district where the foreign estate has its principal place of business or principal assets in the United States. Since it can be expected that in most, if not all, foreign liquidations any office in the United States will have been closed, a § 304 petition seeking discovery will likely have to show assets here. In contrast, § 1410(b) supports the conclusion that a § 304 petition to recover preferential and fraudulent transfers may be brought where the transferred property is located.

■ To be sure, this analysis depends in large part on the *Whiting Pools* analysis that estate property includes property recoverable under § 547 and § 548, and we have held above that the voidability powers of a foreign representative and the nature of the foreign estate must be tested by foreign law. In this, there is no inconsistency. The term "property of the estate" employed in § 109(a) is to be construed according to the definition adopted in *Whiting Pools*. Although, *Whiting Pools* refers to transfers avoidable under §§ 547 and 548, our task is to construe § 304. That Congress provided for turnover actions in § 1410(b) is sufficient indication of its expectation that the concept applies to similar avoidance actions based on foreign law in light of the policies sought to be achieved. It thus seems clear that Congress intended that foreign preference and fraudulent transfer actions seeking to recover property located here are a sufficient basis on which to ground a § 304 petition and we so hold.

---

5. That diversity jurisdiction of the district courts might be employed to bring suit pursuant to foreign law in this case does not generally aid the policy. If the preferred creditor or fraudulent transferee is a citizen of any foreign country, no diversity jurisdiction will lie even if he can be served here since the foreign representative is also an alien. *See, e.g., Kavourgias v. Nickolaou Co.,* 148 F.2d 96, 97 (9th Cir.1945); *Ex Parte Edelstein,* 30 F.2d 636, 638 (2d Cir. 1929); *Tsitsinakis v. Simpson Spence & Young,* 90 F.Supp. 578, 579 (S.D.N.Y.1950).

For the foregoing reasons, Bouchard's motion to dismiss the Petition must be and hereby is denied. It is

SO ORDERED.