In re James Ross HARTLEY, Individually and dba Hartley Trucking and Sharon L. Hartley, Debtors.

Quentin M. DERRYBERRY, II, Trustee, Plaintiff,

v.

The TOLEDO TRUST COMPANY, Successor-in-interest to The Peoples Bank, Carey, Ohio, Defendant.

Adv. No. 83–0750.

Bankruptcy No. 81–01855.

United States Bankruptcy Court, N.D. Ohio, W.D.

Dec. 5, 1985.

See also Bkrtcy., 36 B.R. 594, 39 B.R. 81, 45 B.R. 543, 47 B.R. 159, 50 B.R. 852, 52 B.R. 679, 55 B.R. 770.

Quentin M. Derryberry, II, Wapakoneta, Ohio, trustee/plaintiff.

Mark Kreitman, Mark E. Thomas, Chicago, Ill., for trustee.

Thomas Drake, William E. Clark, Findlay, Ohio, for Peoples Bank of McComb, Ohio.

Reginald Jackson, Steven Smith, Toledo, Ohio, for defendant Toledo Trust Co.

Theodore M. Rowen, Kenneth J. White, Toledo, Ohio, for St. Joseph Bank.

## ORDER DIRECTING TRANSFER OF ADVERSARY PROCEEDING TO THE UNITED STATES DISTRICT COURT

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court upon the motion of the defendant Toledo Trust Company for summary judgment to dismiss all five counts of the plaintiff/trustee, Quentin M. Derryberry, II's complaint and upon the Trustee's response thereto. The Court having carefully examined each count of the complaint and the motion for summary judgment finds that the allegations in the plaintiff's complaint require substantial and material consideration of non-code federal statutes that regulate organizations or activities affecting interstate commerce for the resolution of this case and pursuant to 28 U.S.C. § 157(d) withdrawal of this case to the District Court is mandatory.

## FACTS

On September 8, 1981, James Ross Hartley, individually, and doing business as Hartley Trucking, and Sharon L. Hartley (collectively referred to as "Debtor") filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

On September 8, 1981, the Plaintiff, Quentin M. Derryberry II, was appointed Trustee of the Debtor's estate ("Trustee") pursuant to an order of th is Court.

The Peoples Bank, Carey, Ohio ("Carey Bank"), was a corporation existing and doing business under the laws of the state of Ohio and was a state bank insured by the Federal Deposit Insurance Corporation. The Defendant, Toledo Trust Company, is successor-in-interest to the Carey Bank by reason of a merger between the Toledo Trust Co. and Carey Bank occurring in April of 1982.

Hartley Trucking was a sole proprietorship owned by James Ross Hartley. Commencing about 1975 to about August, 1981, Hartley Trucking engaged in interstate hauling of freight. Its main trucking terminal was located in Carey, Ohio.

From about 1977 through December, 1980, the Debtor maintained checking accounts at the Carey Bank. He also had accounts at the St. Joseph Bank and Trust Company, South Bend, Indiana and the People's Bank of McComb, Ohio.

Calvin Thome ("Thome") was President of the Carey Bank until mid-1977. Subsequently, Thome became an employee of the Debtor. On or about October 1, 1980, Thome resumed his duties as President of the Carey Bank.

Commencing on or about June, 1980, until the Carey Bank account was closed in December, 1980, the Debtor's monthly account statement consistently reflected substantial overdrafts. The Plaintiff alleges the Debtor used the following procedure to cover the overdrafts. In the morning the

Debtor or his agent would telephone the Carey Bank, usually Thome, to ascertain the overdraft amount in the account as of the close of business on the previous day. The Debtor or his agent then would authorize the Carey Bank, usually Thome, to make deposits into the account in an amount slightly in excess of the overdraft, or the Debtor or his agent would make deposits into the account in an amount slightly in excess of the overdraft. The deposits were in the form of: (a) checks drawn on other banks where the Debtor maintained accounts; (b) wire transfers from such other accounts; (c) checks the Debtor received from employees or other business associates; or (d) loans and advances from the Carey Bank. The Carey Bank then placed the deposits from other banks through the normal collection process.

The Debtor had overdrafts at other banks which it attempted to appear to cover by drawing funds on the Carey Bank and on other banks. Thus, during the course of the day, checks payable to or for the benefit of the Debtor, and drawn on the Carey Bank for deposit in other banks, were presented to the Carey Bank for collection. These checks would then in turn create another, or increase the existing, overdraft at the Carey Bank.

### DISCUSSION

The Plaintiff has filed a five count complaint against Toledo Trust. The first count alleges fraudulent transfers were made by the Debtor to the Carey Bank and that they should be avoidable pursuant to 11 U.S.C. § 548. The Plaintiff claims that the Bank aided the Debtor in a check kiting scheme by accepting uncollected funds as payment to cover overdrafts; that the checks deposited were drawn against insufficient or uncollected funds at another bank where the Debtor maintained accounts, and that these transactions resulted in a cycle of overdrafts, or kite. When the cycle collapsed, the Debtor's checks were not honored and the Debtor's innocent creditors were defrauded.

Count two of the Plaintiff's complaint asserts the right to avoid any transfer of an interest in the Debtor's property or any obligation incurred by the Debtor that is voidable under applicable law pursuant to 11 U.S.C. § 544(b). The Plaintiff relies on O.R.C. § 1336.01 through .12 which states that every conveyance of the Debtor's property made with actual intent to hinder, delay, or defraud existing or future creditors is a fraudulent transfer. All of the transfers between the Carey Bank and the Debtor made via the mail, wire transfer or any other method used to cover the overdrafts described in count one are being attacked as fraudulent.

The third count realleges the aforementioned check kiting scheme and seeks to avoid those transactions as preferential transfers to an insider pursuant to 11 U.S.C. § 547.

Count Four repeats the check kiting allegations and accuses the Debtor, the Carey Bank, St. Joseph's Bank and the McComb Bank of acting together for the unlawful purpose of engaging in a check kiting scheme, engaging in fraudulent transfers of assets and concealing and obscuring the Debtor's insolvent financial condition from the Debtor's creditors and suppliers. Those alleged facts according to the Plaintiff constitutes a conspiracy which caused creditors to suffer damages in excess of 6.5 million dollars.

Finally, Count five alleges that the Carey Bank and the Debtor used the United States mails and interstate wires in furtherance of the check kiting scheme. Such conduct according to the Plaintiff constitutes a scheme or artifice to defraud in violation of 18 U.S.C. §§ 1341 and 1343. Furthermore, that the above-described use of the mails and wires by the Debtor and Carey Bank, constitutes a "pattern of racketeering activity" pursuant to 18 U.S.C. §§ 1341, 1343, 1961(1) and (5). By reason of the previously alleged acts the Plaintiff asserts that the Carey Bank violated 18 U.S.C. § 1962(c) by participating in, directly and indirectly, and aiding the conduct of the Debtor's affairs through a pattern of

racketeering activity. Also that the Carey Bank knew the Debtor was engaged in a check kiting scheme and performed overt acts in furtherance of the Debtor's check kiting scheme, in violation of 18 U.S.C. § 1962(d). Furthermore, that the Carey Bank, as an enterprise engaged in activities which affect interstate commerce, used income derived from the above described pattern of racketeering activity in the operation of the Carey Bank, in violation of 18 U.S.C. § 1962(a).

The questions posed by this case concerning jurisdiction are novel and complex. Although part of the first three counts concern traditional bankruptcy questions there is also a part which is inextricably linked to each count that requires substantial and material consideration of non-code federal statutes for their resolution. The Trustee's allegation that the Defendant violated the Racketeer Influenced and Corrupt Organization Act ("RICO") makes it a necessity that the Court determine whether the Defendant's activities were those prohibited by 18 U.S.C. §§ 1961–1968. There is no question this case is the type provided for by the second sentence of § 157(d) which requires mandatory withdrawal by the District Court.

■ Section 157(d) of 28 U.S.C. provides as follows:

The District Court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The District Court shall, on timely motion of a party, so withdraw a proceeding if the Court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

This opinion is based upon the jurisdictional limitations of § 157 of the Bankruptcy Code. Section 157 was part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, 98 Stat. 333 (1984) (hereinafter "the Act") which was enacted on July 10, 1984. The

Trustee's complaint was filed on September 3, 1983, however § 157 is applicable to this case by virtue of § 122 of the Act which states in pertinent part:

(a) Except as otherwise provided in this section, this title and the amendments made by this title shall take effect on the date of the enactment of this Act.

A review of the legislative history, specifically H.R. 5174, 38 Cong.Rec. 15 8897 (daily ed. June 29, 1984) *reprinted* in *Collier on Bankruptcy*, Appendix Vol. 3 at XX–79 (15th ed. 1985) shows that § 122 was intended to implement the jurisdictional aspects of the Act upon the date of enactment and that it does apply to all cases then pending. Indeed the jurisdictional portions of the Act had to become effective on that date, inasmuch as all prior legislative authorization for the Bankruptcy Courts had expired. *In re Bell & Beckwith*, 13 B.C.D. 151, 152, 50 B.R. 437 (Bankr.N.D.Ohio 1985). Therefore, based upon the clear meaning of § 122 and the legislative history the Court finds § 157 must be applied to this case.

The purpose of § 157 according to *1 Collier on Bankruptcy* para. 3.01 at 3.41 (15th ed. 1985) is as follows: "Congress' intent can only be conjecture, but perhaps Congress had in mind that District Judges, which consider such matters on a daily basis, are better equipped to determine them than are Bankruptcy Judges." That explanation appears sound to this Court.

■ In light of § 157(c)(1) which permits Bankruptcy Judges to hear a non-core proceeding and submit proposed findings of fact and conclusions of law to the District Court the question arises as to whether that procedure can be followed with regard to non-code Federal laws. *Collier* answers as follows:

This procedure probably cannot be used with respect to proceedings which require consideration of both Title 11 and laws regulating organizations or activities affecting interstate commerce; first because Section 157(d) pertains to both core proceedings and non-core proceed-

ings, while Section 157(c)(1) applies only to non-core proceedings, so there is no direct authority for the procedures contained in § 157(c)(1) to be applied to core proceedings, and secondly because the mandatory withdrawal provision of Section 157(d) is quite specific, admitting of no exceptions, and if Congress had intended that the bankruptcy Judge be employed to make proposed findings and conclusions in such matters, Congress would assuredly have said so.

*1 Collier on Bankruptcy* para. 3.01 at 3–42, (15th ed. 1985.) Judge Nicholas J. Walinski in *Michigan Milk Producers Association v. Hunter*, 46 B.R. 214, 216 (N.D. Ohio 1985) found that "[n]otwithstanding the fact that the Trustee raised the federal antitrust counterclaim among various defenses and five other counterclaims which do not involve non-bankruptcy federal statutes, resolution of these proceedings will require substantial and material consideration of federal antitrust claim" and accordingly "withdrawal of reference is, therefore, mandatory under 28 U.S.C. § 157(d)." Therefore in the case sub judice as in *Michigan Milk Producers* the mere fact that traditional bankruptcy issues are raised with non-code federal statutes does not permit the bankruptcy court to take jurisdiction in light of § 157(d).

■ Drawing from the legislative history of § 157(d) the reported cases construing it find that it must be given a narrow application. The Court in *In re White Motor Corporation*, 12 B.C.D. 235, 242, 42 B.R. 693 (N.D.Ohio 1984) held that "Section 157(d) must therefore be read to require withdrawal not simply whenever non-code federal statutes will be *considered* but rather only when such consideration is necessary for the *resolution* of a case or proceeding." The standard for withdrawal determined in *In re White Motor, supra* at 243, 42 B.R. 693 is that "§ 157(d) in particular must be read to require withdrawal of the proceedings from the Bankruptcy Court only if this Court can make an affirmative determination that resolution of the claims will require substantial and material consideration of those non-code stat-

utes." *See also Michigan Milk Producers, supra.* Accordingly, the Court finds that the record of this case supports an affirmative determination that resolution of the instant adversary proceeding would require substantial and material consideration of both Title 11 and non-bankruptcy federal statutes regulating organizations or activities affecting interstate commerce therefore making withdrawal of reference mandatory under 28 U.S.C. § 157(d).

■ The novel issue in this case is who may bring the motion to withdraw. To date all of the cases in which a § 157(d) motion to withdraw reference has been made were initiated by the plaintiff or defendant. The code states the District Court will consider withdrawal "on timely motion of a party." This Court does not believe that language excludes the Bankruptcy Court from making the motion for the following reasons.

First, it is clear that parties do not have the right to consent to the trial of non-code federal matters pursuant to § 157(c)(2). *1 Collier on Bankruptcy* para. 3.01 at 3–43, (15th ed. 1985), declares that the parties cannot consent because "withdrawal is, after all, mandatory, and again, the provisions of subsection (c)(2) refer back to (c)(1) which deals with non-core proceedings." The Court agrees with *Collier* and finds that the parties may not consent to confer jurisdiction to the Bankruptcy Court matters which are excluded by § 157(d).

*Collier, supra,* speculates that while the parties cannot consent to trial of § 157(d) matters they may be able to accomplish the same result by failing to make a timely motion to withdraw. Such failure according to *Collier* may constitute a valid waiver. The Court does not agree that the parties may waive the provisions of § 157(d) for to permit waiver would be to allow them to do indirectly what they most assuredly cannot do directly.

Judicial economy requires that a Bankruptcy Judge not be forced to hear a case for which the Court is denied jurisdiction by § 157(d). If the parties were allowed to

waive the provisions of § 157(d) the Bankruptcy Court would be obliged to hear the case yet the District Court could at any time on its own motion withdraw reference. Certainly Bankruptcy Judges are not expected to hold trials during which they must constantly wonder when and if the District Court will withdraw the case thus making all their time and effort count for nothing. This Court believes that if the parties consent, or waive the provisions of § 157(d) either knowingly or by ignorance of the law it is the duty of the Bankruptcy Judge to bring the matter to the District Court's attention to avoid costly delays and wasted efforts of the parties and the Bankruptcy Court.

Finally, the possibility of an inconsistent decision in this case with a pending related matter already before District Judge Nicholas J. Walinski makes it necessary for this Court to withdraw reference. In *Quentin M. Derryberry, II, Trustee v. The Peoples Banking Company,* Civil Case No. 85-7420, reference was withdrawn·by District Court Judge Nicholas J. Walinski.* That case involves the same plaintiff as the case sub judice and makes virtually all the same charges against the McComb Bank as are made in this case against Toledo Trust. A third adversary concerning the same alleged check kiting scheme was filed against the St. Joseph Bank and Trust Company of South Bend, Indiana. Thus there are three cases against banks alleging "RICO" violations filed by the same plaintiff arising out of the same series of transactions. To prevent forum shopping and more importantly to avoid inconsistent results the Court finds that withdrawal of reference is required by § 157(d) and the parties may not waive those provisions. Therefore, because it is necessary to consider the Trustee's "RICO" claims for complete resolution of the instant adversary action withdrawal of reference is mandatory under 28 U.S.C. § 157(d). Furthermore, in accordance with § 157(d), the notion of judicial economy and to prevent inconsistent decisions this Court finds that it has the right sua sponte to direct withdrawal of

reference and transfer this proceeding to the United States District Court.

For the foregoing reasons, it is

ORDERED that this proceeding be, and it hereby is, transferred to the United States District Court.