**In re Shearn MOODY, Jr., Debtor.**

**Bankruptcy No. 85–04138–H3–5.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

June 2, 1986.

W. Steve Smith, Woodard, Hall & Primm, Houston, Tex., trustee.

Ben B. Floyd, Keavin D. McDonald, Bonham, Carrington & Fox, Houston, Tex., for trustee.

Louis Dugas, Jr., Orange, Tex., for debtor.

## MEMORANDUM AND RECOMMENDATION TO DISTRICT COURT FOR WITHDRAWAL OF REFERENCE AND ORDER TO CLERK

LETITIA Z. TAITTE, Bankruptcy Judge.

The Bankruptcy Court hereby recommends, on its own motion, that the District Court on its own motion, pursuant to 28 U.S.C. § 157(d), withdraw the reference of this Bankruptcy matter and all adversary proceedings filed in connection with this matter, except for certain matters and proceedings on which evidence presentation has been completed, and which are *sub judice*. This court derives its authority for this recommendation from 28 U.S.C. § 157(d) and 11 U.S.C. § 105. See also *In re Hartley*, 55 B.R. 781 (Bankr.N.D.Ohio 1985).

A *sua sponte* recommendation by the Bankruptcy court for withdrawal of reference is unusual. The only other case of which this court is aware is *In re Hartley, supra*. There is additional authority for *sua sponte* withdrawal of reference by the District Court, *Furness v. Lilienfield*, 35 B.R. 1006, 1009 (D.C.Md.1983).

In view of the lack of extensive precedent in this area, a discussion of the law and of the circumstances of this case is appropriate.

This court bases its recommendation on its conclusion that the full powers, including contempt powers, of an Article III Judge are necessary for the handling of this case. The records of the main case and related adversary proceedings demonstrate repeated failure of the Debtor to fulfill his responsibility under the Bankruptcy Code, abuse of court processes by the Debtor and his administrative assistant, Norman Revie, and conduct of Debtor's present out of state counsel, which, stated most charitably, has been highly unbecoming to an officer of the court.

In a carefully reasoned and scholarly opinion the District Court of the Southern District of Texas has recently spoken to the question of whether Bankruptcy judges have contempt powers. Opinion of Carl O. Bue, Jr., in *In re Continental Airlines, Inc., Continental Air Lines v. Hillblom, et al.*, 61 B.R. 758 (S.D.Tex.1986). Judge Bue concluded that Bankruptcy judges do not have contempt powers, civil or criminal.

The authorities on this question around the country are divided. See, e.g. *In re Omega Equipment Corp.*, 51 B.R. 569

(D.D.C.1985) and *Better Homes of Virginia v. Budget Service Co.*, 52 B.R. 426, 430 (Bankr.E.D.Va.1985). This Bankruptcy Court has heretofore adopted the position taken in *Better Homes of Virginia, id.*, finding civil contempt powers in the Bankruptcy Court. See this court's April 25, 1986 opinion *In re Shearn Moody, Jr., W. Steve Smith, Trustee v. Norman D. Revie*, Adversary No. 85–0832–H3, "Order on Civil Contempt and Recommendation to District Court that Norman D. Revie be Held Until he Shall Purge Himself of Civil Contempt, and Certification of Facts Supporting Finding of Criminal Contempt."

■ This court takes Judge Bue's opinion to be dispositive of the question of a Bankruptcy court's civil contempt powers henceforward. This court is convinced, however, that the comprehensive powers of an Article III Judge, including civil and criminal contempt powers, are necessary in the circumstances of this case. The following is an overview of the nature of the difficulties presented by this case.

## I. *Nature of Difficulties*

The main case herein has been before this Bankruptcy court since the end of July, 1985, following transfer in early 1985 from the District Court for the Middle District of North Carolina to the District Court for the Southern District of Texas. During that time this court has made in the main case, No. 85–04138–H3–5, a criminal contempt referral to the District Court (Dkt. No. 35). It has also, from the bench found Norman Revie in civil contempt for refusal to answer questions during testimony taken August 7 and 13, 1985 in the hearing on the Trustee's Motion for Enforcement, after consideration and ruling by the court of his Fifth and Fourteenth Amendment claim with reference to each question. It has also awarded Rule 11 sanctions against Martin Paul Solomon of New York City, Debtor's present counsel (Dkt. No. 433).

In a related adversary proceeding, *W. Steve Smith, Trustee of the Estate of Shearn Moody, Jr., Debtor, v. Norman D. Revie*, Bankruptcy Adversary No. 85–0832–H3, this court has found Norman Revie to be in civil contempt for failure to turn over to the Trustee a rare gold coin, and recommended to the District Court that Norman D. Revie be held until he shall purge himself of civil contempt, and has certified facts supporting criminal contempt. The District Court subsequently issued in Bankruptcy Adversary No. 85–0832–H3 and District Court Misc. No. H–86–143, orders for the arrest and appearance of Norman Revie. The docket sheets in those causes do not reflect the apprehension or appearance of Norman Revie to date.

In addition, both Mr. Revie and his counsel were sanctioned following hearing on November 12, 1985, for expenses occasioned to the Bankruptcy estate by their seeking and obtaining an ex parte injunction in state court restraining the Trustee from performing those acts which are his right and responsibility under the Bankruptcy Code. The state court proceeding was removed to federal court, Adv. No. 85–0895.

This Bankruptcy judge, and the Bankruptcy judge in charge of this case in North Carolina before it was transferred to the Southern District of Texas, have been the subject of a number of Motions to Recuse, Disqualify and Withdraw Reference by the Debtor and his administrative assistant, on grounds of bias and prejudice. See, e.g. United States Bankruptcy Court, Middle District of North Carolina, Cause No. 83–01490C, Motion to Recuse filed December 18, 1984, Motion to Withdraw Reference filed December 18, 1984; United States Bankruptcy Court, Southern District of Texas, Cause No. 85–04138, Motion to Disqualify filed *pro se* by Debtor when counsel would not sign, Dkt. No. 185, and Order dismissing same, Dkt. No. 204; Adversary Proceeding No. 85–0832–H3, Emergency Motion to Disqualify, Dkt. No. 5, and Emergency Motion to Withdraw Reference, Dkt. No. 6, and Order denying same dated February 20, 1986, Dkt. No. 10. All such motions in the Southern District of Texas were filed on the eve of a hearing or trial.

In this district, the most recent of these motions was filed May 14, 1986 in the main case on the eve of trial of several adversary proceedings. It was 77 pages in length, scurrilous in tone, and inaccurate in its recitation of facts and representations of law. Local counsel struck his name from the signature block and initialled the strikeout. The Motion was signed only by Debtor's New York counsel, Mr. Solomon. Dkt. No. 483. It was followed by a Motion before the District Court for Mandamus to require the Bankruptcy judge to disqualify, filed in United States District Court, Southern District of Texas, No. MBH 86–5. The Motion to Disqualify was accompanied by a letter to chambers advising the Bankruptcy judge that disciplinary action would be pursued by the Debtor against the judge if the Motions to Disqualify or for Mandamus were not granted.

The Motions to Disqualify and for Mandamus were denied (Bankruptcy Cause No. 85–04138–H3–5, Dkt. No. 489 and United States District Court Cause No. MBH 86–5, Order of May 20, 1986, respectively.) The Motion to Disqualify is presently the subject of a Request by the Trustee for Sanctions against the Debtor's counsel, Bankruptcy Cause No. 85–04138–H3–5, Docket No. 491. The possibility that delay is one of the objectives in the bringing of these Motions must be considered. It is worthy of note that a Motion to Disqualify opposing counsel by counsel who appears to be the same Martin Paul Solomon was determined in a New York case granting F.R. C.P., R. 41 dismissal against Mr. Solomon's client to have been frivolous and for the purpose of delay. *Chira v. Lockheed Air Craft Corp.*, 85 F.R.D. 93 (S.D.N.Y.1980), *aff'd. Chira v. Lockheed*, 634 F.2d 664 (2nd Cir.1980).

Debtor occasionally takes action in court proceedings independent of his counsel and the Federal Rules of Civil Procedure. When dissatisfied with his prior counsel, and/or with rulings denying substitution of counsel, Debtor filed various *pro se* motions, in utter disregard of F.R.C.P. Rule 11. See Southern District of Texas, Bankruptcy Cause No. 85–04138–H3–5, Dkt.

Nos. 185, 186, 214, 219, 326, 327, 330, 365, 366, 368, and 369. In a recent adversary trial, Cause No. 85–1010–H3, during strenuous argument on May 21, 1986 over admission of various portions of a deposition of the absent Debtor/Plaintiff, Debtor's present counsel advised that at the deposition he did not always have control of his client.

The Debtor has never appeared before this court. He has provided at various times medical "excuses." These were characterized by documents which were not properly notarized or sworn, or, in another instance, notarized by Debtor's New York counsel, Mr. Solomon, and sworn to by a doctor who did not represent that he had in fact examined the Debtor, (See S.D.TX.Br. No. 85–04138–H3–5, Dkt. No. 374). Consistently motions for continuance or protection on medical grounds were filed on the eve of a trial or deposition or Bankruptcy Rule 2004 examination, without benefit of cross examination of the affiant by counsel for the Trustee or for the creditors. See, e.g. Dkt. Nos. 327, 368, 374 in S.D.TX. Bkr. No. 85–04138–H3–5, and Dkt. Nos. 16 and 38 in S.D.TX. Bkr.Adv. No. 85–1010–H3, and Dkt. Nos. 9 and 36 in S.D.TX. Bkr.Adv. No. 85–1009–H3.

This case has been characterized by numerous shifts in Debtor's choice of counsel. Initially in Bankruptcy No. 83–01490 in North Carolina he employed Jane Ford and Brisco Swan (See Application to Employ dated December 9, 1983). Additionally, he applied on December 23, 1983 to employ Maupin, Taylor, & Ellis. Subsequently, counsel for Debtor in possession applied to withdraw from the case, (November 5, 1984), and on December 31, 1984, Debtor in Possession sought a stay pending determination of Motion to Withdraw. Debtor in Possession then applied on January 3, 1985 to retain John Duesenburg as counsel.

After the case was transferred to the Southern District of Texas District Court (where it was assigned Dist.Ct. No. 85–606), Jane Ford was designated as local co-counsel and John Duesenburg as attor-

ney in charge (No. 85–606, Dkt. No. 207). Subsequently Debtor moved for substitution of counsel (Dkt. No. 213). After referral of the case by the District Court to the Bankruptcy Court, Haight, Gardner, Poor and Havens was substituted as Debtor's counsel (S.D.TX.Bkr. No. 85–04138–H3–5, Dkt. No. 5).

On August 1, 1985 the Haight, Gardner firm orally moved to withdraw, and followed this on August 6, 1985 with a written motion (Dkt. No. 23). This Motion to withdraw was later orally withdrawn, but a subsequent written Motion to Withdraw was filed October 30, 1985 (Dkt. No. 169).

On November 18, 1985, following oral efforts to substitute Messrs. Solomon and Unger as Debtor's counsel in place of the Haight, Gardner, Poor and Havens firm, a written Motion to Substitute (Dkt. No. 258), Local Rule 1 application by Solomon (Dkt. No. 262), and Br.R. 2016 Disclosures of Fees (Dkt. Nos. 259 and 260) by Solomon & Unger were filed. These "Disclosures" disclosed very little—merely that "I have been promised a retainer fee of $30,000.00 by a Washington, D.C. attorney. He has assured me that the source of the funds is not the Debtor, but rather a client of his and that he is not authorized to disclose the source." The Trustee and a major creditor strenuously objected to substitution. This Court denied substitution by Order dated November 20, 1985, Dkt. No. 245. Debtor and the Haight, Gardner firm appealed successfully, and on January 29, 1986, Messrs. Solomon and Unger were designated as Debtor's counsel by the District Court.

The source of attorney fees for this Debtor remains an area of uncertainty and concern. All payments to counsel by a debtor are subject to disclosure to and approval by the Court, 11 U.S.C. § 327 and § 329; R. 2016, Bankruptcy Rules of Practice and Procedure. The Alabama Receiver, during the North Carolina proceedings, filed on January 21, 1985, a Motion requesting the court to conduct an investigation of activity between the Debtor and his attorneys. At a Rule 2017 exam in the S.D.TX.Bkr.Ct., on February 20, 1986, Mr.

Solomon testified to receiving $30,000.00 from an attorney in the District of Columbia. He had not previously known this attorney but relied on his representations that the source of the funds was not property of the estate. He testified, *inter alia,* that the attorney had pictures of distinguished Government employees on his walls. This Court found his testimony not dispositive of legitimate questions raised, and that hearing has not been concluded.

## II. *Alternative to Withdrawal of Reference*

■ There is a course of action available to this court which does not involve recommendation of withdrawal of reference. Dismissal of the Bankruptcy case is an option in instances of bad faith filing. *In re Coastal Cable T.V., Inc.,* 709 F.2d 762, 764–65 (1st Cir.1983); *Furness v. Lilienfield,* 35 B.R. 1006 (D.Md.1983); *In re Coram Graphics,* 11 B.R. 641 (Bankr.E.D.N.Y. 1981); *In re Nikron,* 27 B.R. 773, 777 (Bankr.E.D.Mich.1983); *SEC v. U.S. Realty and Improvement Co.,* 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940) (Dist.Ct. may dismiss Ch. XI petition in the exercise of its equity powers).

There is a serious question whether this Debtor's filing in Bankruptcy was in good faith. Evidence admitted during the hearing in July and August of 1985 on the Trustee's Motion for Enforcement demonstrated that this Debtor filed in Bankruptcy following efforts by a major creditor, the Receiver of Empire Life Insurance Company of Alabama, to execute on a $6 million dollar judgment against the Debtor entered in CA–3–5678–D and CA–3–7625–C, consolidated, in the Northern District of Dallas, following a jury trial, Judge Hill presiding. The evidence also showed extensive and complex transfers of Debtor's property which appeared to be without any rational business purpose, and to be in fact for the purpose of avoiding execution by creditors. "Eve of foreclosure" filing is one of the elements of a bad faith filing of a bankruptcy case. *In re Little Creek Development Co.,* 779 F.2d 1068 (5th Cir. 1986).

There is an equally serious question as to whether Debtor's prosecution of his bankruptcy case has been in good faith. In addition to the matters discussed in Section I above, the court notes that the very experienced counsel to the North Carolina Trustee in these proceedings testified during the hearing on the Trustee's Motion for Enforcement, that this was the worst Chapter 11 case that he had ever seen. The conclusions in the North Carolina "Trustee Report Pursuant to 11 U.S.C. § 1106" question the Debtor's good faith. (See PX 116 introduced during hearing on "Trustee's Motion for Enforcement.") The Trustee was appointed by October 26, 1984 Order of the North Carolina Bankruptcy Judge upon findings of "incompetence, mismanagement and possible fraud" by the Debtor. (U.S.Bkr.Ct., M.D.N.C., No. 83–01490, Dkt. No. 1F–73)

While he was a Debtor in Possession, Debtor did not fulfill his responsibilities under the Code. See October 26, 1984 "Order Appointing Trustee," U.S.Bkr.Ct., M.D.N.C., *supra.* Following the appointment of a Trustee in North Carolina, and a successor Trustee in Texas, Debtor failed to cooperate with the Trustee. See "Trustee Report Pursuant to 11 U.S.C. § 1106," U.S.Bkr.Ct., M.D.N.C., *supra.* And see this Court's September 13, 1985 "Findings of Fact and Conclusions of Law" on Motion for Enforcement, S.D.TX.Bkr. No. 85–04138–H3–5, Dkt. No. 67. He has withheld assets, books, and records.

He has directly or indirectly attacked the competence and integrity of each Trustee. See, *inter alia,* U.S.Bkr.Ct., M.D.N.C., December 27, 1984, "Debtor's Motion to Remove Trustee for Cause." And see a November 15, 1984 letter from William Pabst, of the "Centre for Indepedence of Judges and Lawyers," to the Public Integrity Section of the United States Department of Justice, Trustee's Exhibit 59 introduced during hearing on Motion for Enforcement. Mr. Pabst testified in the Southern District of Texas hearing on the Trustee's Motion for Enforcement regarding his contact with the Debtor and Debtor's agents about this case. His letter attacks the integrity of the North Carolina Judge and Trustee's counsel. See also Trustee's Exhibits 52 and 53 introduced during the hearing on the Motion for Enforcement, correspondence from the Debtor's administrative assistant to the Texas Trustee and his attorneys. This Court has heard testimony from the counsel to the North Carolina Trustee, and from the Texas Trustee and his counsel. Each has been competent, honest, and credible.

The Southern District of Texas Trustee has attempted to obtain approval of a disclosure statement and plan, as is his duty. (Dkt Nos. 175, 176, 293, 341, 342, 343, 393, 394, 395, 400, and 424) He has been met with resistance by Debtor, who takes the position that a disclosure statement cannot be adopted and a plan cannot be implemented until final determination of exactly what assets are included in the estate. (Dkt Nos. 397, 409, 420). In the adversary proceedings which bring these issues before the court, Nos. 85–1009–H3 and 85–1010–H3, Debtor has sought continuances. All rulings of this court to date on question of assets have been appealed by Debtor. (Indeed, virtually every Order of this court other than purely ministerial Orders has been appealed by Debtor. See, e.g., United States Bankruptcy Court, Southern District of Texas, No. 85–04138–H3–5, Dkt. Nos. 96, 107, 213, 214, 215, 219, 248, 249, 256, 277, 365, 366, 375, 414, 421, 442 and 465.) Were this court to await the outcome of all appeals before permitting disclosure statement and plan, this case would go on for years before any disclosure statement was adopted or plan implemented, or any distribution made to creditors.

■ It may thus be appropriate, in light of possible bad faith, to consider dismissal of this case. However, it is not clear in this case that dismissal is in the best interest of the creditors. See *Banque de Financement v. First National Bank of Boston,* 568 F.2d 911 (2nd Cir.1977); *In re Geiger Enterprises, Inc.,* 635 F.2d 106 (2nd Cir.1980); *Matter of Mandalay Shores Coop. Housing Association,* 22 B.R. 202

(M.D.Fla.1982). The principal creditor in this case, the Alabama Receiver of Empire Life Insurance Company, has not sought dismissal, nor has any other creditor.

### III. *Recommendation*

The legislative history of the Code and Amendments shows a Congress fashioning a system for the relief of Debtors, in the interest of a smoothly functioning national economy. See, e.g., House Report No. 95–595 on Bankruptcy Reform Act of 1978, P.L. 95–598, U.S.Code Cong. & Admin. News 1978, pages 5787, 5966–5968. The system was not fashioned to protect fraudulent or abusive activity. As interpreted by the case law, the system is also not fashioned to provide Article I Bankruptcy judges with the powers to deal fully with fraud or abuse of the system. Accordingly, it is appropriate that Congress has placed original jurisdiction in Bankruptcy matters in the District Court, but with blanket authority to refer Bankruptcy matters to the Bankruptcy Court, and to withdraw that reference. 28 U.S.C. § 157.

Upon careful consideration of the record of this case and the adversary proceedings filed in connection with it, this court believes it appropriate: 1) to advise the District Court of abuses which, in view of case law interpretations, are beyond the statutory powers of this court to deal with in the comprehensive manner this case requires, and 2) to recommend that the District Court withdraw the reference.

This court recommends withdrawal of reference 1) of the main Bankruptcy Case, No. 85–01438–H3–5, in its entirety, and 2) of all adversary proceedings filed in connection with it, as shown on the main case docket sheet, including Adversary Nos. 86–0187, 86–0232, 86–0248, 85–0593, 85–0594, 85–0595, 85–0596. This court excepts from this recommendation four matters and proceedings on which the taking of evidence has been concluded, and which are now *sub judice*, and two adversary proceedings which are now concluded. Those matters and proceedings excepted from this recommendation are specifically:

Main Case No. 85–04138–H3–5, First, Second, Third and Fourth Application for Reimbursement by Trustee's Accountant, Seidman and Seidman; post-hearing brief time requested by Mr. Solomon expires June 6, 1985.

Adversary No. 85–1009–H3, trial completed, post trial briefs to be completed by June 9, 1986.

Adversary No. 85–0097–H3, trial completed, post trial briefs due by June 6, 1986.

Adversary No. 85–0726–H3, trial completed, under advisement.

Adversary No. 85–1010–H3, trial completed, Trustee's R. 41(b) Motion to Dismiss, granted.

Adversary No. 85–0832–3, trial completed, Order Directing Turnover entered.

### IV. *Order*

The Clerk is hereby Ordered to transmit forthwith this Recommendation of Withdrawal of Reference to the District Court.