**In the Matter of HAWKEYE CHEMICAL COMPANY, Debtor.**

**Bankruptcy No. 86–3231–D.**

United States Bankruptcy Court, S.D. Iowa.

March 30, 1987.

See also, Bkrtcy., 71 B.R. 315.

Salvatore A. Barbatano, Chicago, Ill., for debtor.

Terry M. Giebestein, Davenport, Iowa, for Local Counsel.

## ORDER ON MOTION FOR RECOMMENDATION TO WITHDRAW REFERENCE

LEE M. JACKWIG, Bankruptcy Judge.

On March 18, 1987 debtor Hawkeye Chemical Company (Hawkeye) filed a motion for recommendation to withdraw reference pursuant to 28 U.S.C. section 157(d). Hawkeye claims that resolution of its amended motion to reject executory contract requires the court to consider not only Title 11 law but also laws of the United States affecting interstate commerce, namely the Natural Gas Act. For the jurisdictional reason set forth below, Hawkeye's motion for recommendation to withdraw reference is denied.

## FACTUAL BACKGROUND

On December 8, 1986 Hawkeye filed for protection under Chapter 11 of the Bankruptcy Code. Hawkeye is engaged in the business of producing anhydrous ammonia, a liquid fertilizer. Natural gas is a critical element in the production of anhydrous ammonia and, since 1961, Hawkeye has entered into a number of contractual arrangements with natural gas suppliers to satisfy its needs. One of these suppliers is Interstate Power Company (Interstate), a public utility. On August 17, 1961 Hawkeye and Interstate executed a "Firm Gas Service Agreement" (Agreement) by which Interstate is obligated to provide a designated amount of gas to Hawkeye and, in return, Hawkeye must pay for the gas and must also pay a demand charge. Generally, utilities impose demand charges on customers to defray fixed costs that are incurred regardless of the amount of power supplied. Hawkeye contends it is required to pay a yearly demand charge of approximately $2,640,000.00. Over the years, Interstate and Hawkeye have amended the Agreement numerous times. Most of the amendments have concerned the amount of gas Interstate is obligated to supply Hawkeye. In order to supply its customers, Interstate purchases natural gas from a wholesale supplier of gas, Natural Gas Pipeline Company of America (Natural). By the terms of its contractual arrangements with Natu-

ral, Interstate is required to pay Natural a demand charge.

In its motion and amended motion to reject executory contract, Hawkeye asks this court to reject the Agreement on the grounds that it is burdensome to the estate and that rejection is fundamental to reorganization. Interstate resists claiming, among other things, that Hawkeye is impermissibly trying to reject only a part of an interdependent executory contractual arrangement. Further, Interstate argues rejection of the Agreement would be contrary to the "business judgment" standard for rejecting or accepting executory contracts.

Hawkeye contends that withdrawal is warranted because resolution of the executory contract issue will require consideration of the Natural Gas Act, 15 U.S.C. section 717 *et seq.* Hawkeye bolsters its arguments by noting that Interstate is engaged in proceedings with the Federal Energy Regulatory Commission (FERC), an administrative body charged with regulating the interstate transportation of gas under the Natural Gas Act. Hawkeye asserts that the proceedings before FERC involve Interstate's efforts to reduce its demand charge obligations to Natural because of Hawkeye's Chapter 11 filing and failure to pay demand charges to Interstate.

## DISCUSSION

### A. *Jurisdiction*

█ The standard for mandatory withdrawal of the reference from bankruptcy court is set out in 28 U.S.C. section 157(d) which in part provides:

The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Congress enacted section 157(d) and other provisions in the wake of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), wherein the United States Supreme Court ruled that the jurisdiction conferred on bankruptcy judges by the Bankruptcy Act of 1978, Pub.L. No. 95–598, 92 stat. 2549 was unconstitutional in that bankruptcy judges were exercising Article III judicial powers without life tenure.

Determining whether this court can render a proposed decision in this case requires an examination of section 157(d) in light of 28 U.S.C. section 157(c)(1) which allows bankruptcy judges to make proposed findings of fact and conclusions of law in non-core proceedings. *Collier* concludes that it is doubtful that section 157(d) permits an analogous procedure. 2 *Collier on Bankruptcy* ¶ 301 at 3–55 (15th ed. 1986). *Collier* states:

[T]he mandatory withdrawal provision of section 157(d) is quite specific, admitting of no exceptions when a withdrawal motion is made, and if Congress had intended that the bankruptcy judge be employed to make proposed findings and conclusions in such matters, Congress would assuredly have said so.

*Id., see also In re Hartley,* 55 B.R. 781, 13 C.B.C.2d 1267, 1271–72 (Bankr.N.D. Ohio 1985). *Collier* goes on to observe that this conclusion is buttressed by the fact that an early version of section 157 permitted bankruptcy judges to render proposed decisions with respect to mandatory withdrawal proceedings. 2 *Colliers on Bankruptcy* ¶ 3.01 at 3–55–56. However, this aspect of the proposed bill is absent from the legislation that was eventually enacted. *Id.* Therefore, this court concludes it does not have jurisdiction to render a proposed decision concerning mandatory withdrawal of the reference. A motion for withdrawal of the reference must be brought in the district court. *In re Sutherlin,* Nos. 86–1066, 86–3859, 86–3847, 86–3887 (E.D.Louisiana Jan. 15, 1987) [Available on WESTLAW—FBKR–DCT database].

### B. *Section 157(d) Criteria*

Although this order is final in nature and should not be construed as the equivalent of a proposed decision to the District Court, the merits of Hawkeye's motion will be addressed for the sake of completeness.

The three criteria that must be met under section 157(d) are delineated in *In re Baldwin-United Corp.* 57 B.R. 751 (S.D. Ohio 1985). That court stated:

First, the person seeking withdrawal must be a party.... Second, the motion to withdraw the reference must be timely.... Finally, 'resolution' of the proceeding must require consideration of non-bankruptcy Federal statutes regulating interstate commerce.

*Id.* at 753.

The first requirement is met as Hawkeye is a party to this action. With respect to timeliness, courts look to a number of factors. *See e.g., Burger King Corp. v. B–K of Kansas, Inc.*, 64 B.R. 728, 730–31 (D.Kan.1986) (a court should assess whether a party is prejudiced by the delay); *In re Baldwin, supra* at 753–54 (a motion is untimely if it could have been filed earlier but is filed at a time that delays and jeopardizes reorganization); *In re Giorgio*, 50 B.R. 327, 329 (D.R.I.1985) (withdrawal must be filed "as soon as practicable after it has become clear that 'other laws' of the genre described in 28 U.S.C. § 157(d) are implicated"). On December 19, 1986, Hawkeye filed its initial motion to reject executory contract. Pursuant to a stipulation and order dated February 6, 1987, the parties agreed to file all supplemental pleadings, briefs and memoranda concerning the executory contract issues by March 31, 1987. Certainly Hawkeye was aware of the FERC proceedings at the time it filed the motion to reject. Yet, it has seemingly waited until the eleventh hour to move for a recommendation for withdrawal. This court seriously questions the propriety of Hawkeye's motion pursuant to the aforementioned principles and under these circumstances.

■ Hawkeye's motion ultimately turns on its claim that resolution of the executory contract issues requires substantial and material consideration of non-bankruptcy federal law. One of the first courts to review the legislative history of section 157(d) concluded that "§ 157(d) ... must be read to require withdrawal of the proceedings from the bankruptcy court only if [a]

court can make an affirmative determination that resolution of the claims will require substantial and material consideration of ... non-Code statutes." *In re White Motor Corp.*, 42 B.R. 693 at 705 (N.D.Ohio 1984); *accord United States v. ILCO, Inc.*, 48 B.R. 1016, 1021 (N.D.Ala. 1985). In reaching this conclusion, the *White Motor Corp.* court noted legislative history indicated that the language of section 157(d) should be read very narrowly to prevent section 157(d) from becoming "an escape hatch through which most bankruptcy matters will be removed to a district court." *White Motor Corp.*, at 700. Another court has expanded on the *White Motor's* test by ruling that a movant "must establish that the proceeding involves a substantial and material question of both title 11 and non-Code federal law and the non-Code federal law has more than a *de minimis* effect on interstate commerce." *In re Anthony Tammaro, Inc.*, 56 B.R. 999, 1006–07 (D.N.J.1986) *accord In re Maislin Industries, U.S., Inc.*, 50 B.R. 943, 948 (Bankr.E.D.Mich.1985). One of the purposes underlying the enactment of section 157(d) is to remove from bankruptcy courts matters with which such courts are not familiar. 2 *Collier on Bankruptcy* § 3.01, p. 3–53.

■ In the case at bar, Hawkeye moved under 11 U.S.C. section 365 to reject its August 17, 1961 agreement with Interstate. Resolution of the executory contract issues may require the court to determine if the agreement is burdensome or may require consideration of the "business judgement rule". *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959 (1943). Additionally, given Interstate's assertions that Hawkeye is attempting to partially reject a contract, the court may have to examine the scope of the contractual relations between Hawkeye and Interstate. However, Hawkeye's contention that resolution of the administrative proceedings involving FERC, Interstate and Natural may have a critical effect on the executory contract issues appears to be without merit. There is nothing in the

record before this court to indicate that its application of familiar executory contract standards will involve substantial and material questions of the Natural Gas Act.

### CONCLUSION AND ORDER

WHEREFORE, this court hereby finds that it does not have jurisdiction to render a proposed decision concerning mandatory withdrawal of the reference.

THEREFORE, IT IS SO ORDERED that the debtor's motion for recommendation to withdraw reference is denied.