138 B.R. 121 (1992)
In The Matter Of KINGSCROFT INSURANCE COMPANY, LTD., El Paso Insurance Company, Ltd., Lime Street Insurance Company, Ltd., and Mutual Reinsurance Company, Ltd.
No. 91-22065-BKC-AJC.
United States Bankruptcy Court, S.D. Florida.
January 30, 1992.
*122 Dennis L. Frostic, McCullough, Campbell & Lane, Chicago, Ill., and Edward A. Moss, Mahlia L. Perito, Anderson, Moss, Parks, Meyers & Sherouse, P.A., Miami, Fla., for petitioners Kingscroft Ins. Co., Ltd., El Paso Ins. Co., Ltd., Lime Street Ins. Co., Ltd., and Mut. Reinsurance Co., Ltd.
Jack H. Vital, III, Sheldon J. Schlesinger, P.A., Fort Lauderdale, Fla., for Cynthia Bates, Individually, and as Legal Guardian of Justin Bates.

MEMORANDUM DECISION
A. JAY CRISTOL, Bankruptcy Judge.
This matter came on to be heard before this Court on November 18, 1991 on the question of this Court's jurisdiction. The Court's opinion is set forth below.
This case involves the filing of a Petition for Relief Ancillary to Foreign Proceedings filed pursuant to Section 304 of the United States Bankruptcy Code. 11 U.S.C.A. § 304 (1991). Following a challenge to this Court's jurisdiction made by an interested party, this Court has received briefs, affidavits, and heard argument on the threshold issue of jurisdiction to adjudicate the Petition.
Petitioners Kingscroft Insurance Company, Ltd. ("Kingscroft"), El Paso Insurance Company, Ltd. ("El Paso"), and Lime Street Insurance Company, Ltd. ("Lime Street"), are insurance companies incorporated under the laws of the United Kingdom, with their principal places of business in London, England. Petitioner Mutual Reinsurance Company, Ltd. ("Mutual") is an insurance company incorporated under the laws of Bermuda, with its principal place of business in Hamilton, Bermuda. Petitioners have been in the business of providing excess commercial liability insurance in the United States through the London insurance markets.
The respective Boards of Directors of the Petitioners determined, because of potentially adverse information regarding the financial condition of the companies, to cease paying claims on March 19, 1990. Subsequently, on August 30, 1990, each of Petitioners filed a "winding-up petition" before the High Court of Justice in London, England, pursuant to the United Kingdom Insolvency Act 1986. In addition, on August 31, 1990, Mutual filed a winding-up petition before the Supreme Court of Bermuda in Hamilton, Bermuda, pursuant to the Bermudian Companies Act 1981. The affairs of Petitioners following the filing of the winding-up petitions are governed by the United Kingdom Insolvency Act 1986 and the Bermudian Companies Act 1981.
In connection with the filing of the winding-up petitions, Petitioners have stated their intent to seek to enter into arrangements with its creditorsknown as "Schemes of Arrangement"pursuant to Section 425 of the United Kingdom Companies Act 1985 and Section 99 of the Bermudian Companies Act 1981. Negotiations with creditors to develop acceptable Schemes of Arrangement are presently on-going. When the Schemes are determined by the respective Boards, they will be submitted to all creditors for a vote, and finally to the High Court in London, for approval.
Petitioners have filed this action to enjoin the continuation of a lawsuit filed against them in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, Docket No. 85-24016 CD, captioned "JUSTIN BATES, a minor, by and through his mother and legal guardian, CYNTHIA BATES, and CYNTHIA BATES, Individually vs. EL PASO INSURANCE COMPANY, LTD., (f/k/a KINGSCROFT INSURANCE COMPANY, LTD.), LIME STREET INSURANCE COMPANY, LTD., (f/k/a LOUISVILLE INSURANCE COMPANY, LTD.) and MUTUAL REINSURANCE COMPANY, LTD., Defendants" (the "Underlying Action"). The Underlying *123 Action purports to state a cause of action for medical malpractice against several defendants, including physicians and health care providers, insured under indemnity policies to portions of which Petitioners had severally subscribed. On March 26, 1990, the Plaintiffs entered into a settlement with the defendants insured in part by Petitioners for a total of $2,500,000. Petitioners did not object to the settlement at the time it was made, and have now stated that they could not consent to pay their respective pro-rata amounts of the settlement because they were insolvent and involved in foreign bankruptcy proceedings. Petitioners agree that the defendants insured by Petitioners (and Plaintiffs, if Plaintiffs can present a proper assignment of the insureds' rights) have a liquidated claim against each of them, severally and not jointly, in the following amounts: Kingscroft for $198,000, El Paso for $101,700, Lime Street for $90,000, and Mutual for $91,800.
In 1991, Plaintiff re-instituted the action in the Circuit Court, joining for the first time three of the Petitioners[1] as defendants, to collect the total of $481,500 owing to the insured medical providers from Petitioners.
The Plaintiff in the Underlying Action has contested this Court's jurisdiction to adjudicate the Petition for Relief, and Petitioners have maintained that this Court has proper jurisdiction to decide this matter. This Court decides that jurisdiction and venue are proper in this Court, and orders accordingly, as analyzed fully below.

Section 304 of the Bankruptcy Code
This petition is governed by express provisions of the United States Bankruptcy Code which envision the enforcement in the United States of foreign insolvency proceedings. Section 304 of the United States Bankruptcy Code was specifically enacted as part of the Bankruptcy Reform Act of 1978 "to address complex and increasingly important problems involving the legal effect the United States courts give to foreign bankruptcy proceedings," and to foster international cooperation in the administration of bankrupt estates. See H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 324-325 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 35 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787; In re Culmer, 25 B.R. 621 (Bankr.S.D.N.Y.1983); In re: Banco De Descuento, Debtor, 78 B.R. 337 (Bankr.S.D.Fla.1987). The doctrine of comity at the common law may also support relief similar to that contemplated in Section 304, see, e.g. Cornfeld v. Investors Overseas Services, Ltd., 471 F.Supp. 1255 (S.D.N.Y.1979), aff'd, 614 F.2d 1286 (2d Cir. 1979), and Section 304 expressly contemplates considerations of comity, but this Court's jurisdiction is founded on the statutory grant found in the Bankruptcy Code and related federal statutes.
Federal statute has granted original jurisdiction on cases arising under the Bankruptcy Code to federal district courts, 28 U.S.C.A. § 1334 (West 1991), and the federal district courts are authorized to refer all such cases to the bankruptcy courts in the district, 28 U.S.C.A. § 157 (West 1991). This case arises expressly under Section 304 of the Bankruptcy Code, see 11 U.S.C.A. § 304, so subject matter jurisdiction is proper in this Court.
Venue for cases arising under Section 304 is also prescribed by federal statute. Title 28, section 1410 provides:
(a) A case under section 304 of title 11 to enjoin the commencement or continuation of an action or proceeding in a State or Federal court, or the enforcement of a judgment, may be commenced only in the district court for the district where the State or Federal court sits in which is pending the action or proceeding against which the injunction is sought.
(b) A case under section 304 of title 11 to enjoin the enforcement of a lien *124 against a property, or to require the turnover of property of an estate, may be commenced only in the district court for the district in which such property is found.
(c) A case under section 304 of title 11, other than a case specified in subsection (a) or (b) of this section, may be commenced only in the district court for the district in which is located the principal place of business in the United States, or the principal assets in the United States, of the estate that is the subject of such case.
28 U.S.C.A. § 1410 (West 1991). This action is agreed to have been brought to "enjoin the commencement or continuation of an action or proceeding" in a Florida State court located in this district. Therefore, venue is proper for this petition to enjoin the Underlying Action in a court in this district.
The Plaintiff in the Underlying Action has, however, raised additional issues with respect to Petitioners' right to relief under Section 304, namely (1) whether the Petition has been filed by a proper "foreign representative," and (2) whether Petitioners must prove the presence of assets within this district.
The "foreign representative" who must file a petition under Section 304 is defined as a "duly selected trustee, administrator, or other representative of an estate in a foreign proceeding." 11 U.S.C.A. § 101(24) (West 1991). The Petition has been filed at the instance of the respective Boards of Directors of the Petitioners, under the direction of Mr. Roger P. Borley, a Director of each of them. Under United Kingdom and Bermuda law, the boards of directors of companies under pending winding-up petitions retain the authority to manage the companies.[2] This arrangement may be analogized to the "Debtor in Possession" notion of U.S. bankruptcy law.
The precise administration of foreign insolvency proceedings must be expected to vary, and the situation under the United Kingdom Insolvency Act during a pending winding-up petition, pending final disposition of the case, appears "not repugnant to American laws and policies." See In re: Banco De Descuento, Debtor, 78 B.R. 337 (S.D.Fla.1987). Given the broad definition of "foreign representative," this Court finds that the Boards of Directors of Petitioners, through Mr. Borley, are proper representatives of the estates.
Having determined that the Petition has been filed by a proper representative, it must be determined that the foreign insolvency proceedings constitute proper "foreign proceedings." "Foreign proceeding" is defined:
proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization.
11 U.S.C.A. § 101(23) (West 1991). Petitioners have availed themselves of the protections of the United Kingdom Insolvency Act 1986, the Bermudian Companies Act 1981 pending adoption of Schemes of Arrangement under the United Kingdom Companies Act 1985 and the Bermudian Companies Act 1981. The filing of winding-up petitions invokes certain interim bankruptcy protections for the Petitioners, pending either a final order of winding-up of the Petitioners' affairs, or the dismissal of the petitions in favor of operation under properly-adopted "Schemes of Arrangement." Sections 126 and 127 of the United Kingdom Insolvency Act 1986, for example, include provisions for seeking stay of litigation against the bankrupt, and for avoiding post-petition transfers of property closely analogous to provisions under the U.S. Bankruptcy Code. In fact, Petitioners cannot agree to pay the agreed settlement amounts precisely because Section 127 of the Insolvency Act 1986 prohibits any disposition of Petitioners' property without *125 court order, and no such order has been entered.
The current status of the pending winding-up petitions places the Petitioners in a situation similar to a Debtor under the Chapter 11 of the U.S. Bankruptcy Code prior to adoption of a plan or conversion to Chapter 7. A final winding-up may be roughly analogized to liquidation under Chapter 7 of the Bankruptcy Code; while operation under a Scheme of Arrangement may be analogized to adoption of a plan of reorganization under Chapter 11 of the Bankruptcy Code. Inspection of portions of the United Kingdom statutes presented by Petitioners, together with the affidavits of experts presented, lead to the conclusion that the systems of bankruptcy in the United Kingdom and Bermuda are similar to that in the United States for purposes of Section 304 analysis. The United Kingdom and Bermuda, as sister states in the common-law tradition out of which United States jurisprudence has grown, have legal systems and general notions of justice similar to those in the United States.
Based on the allegations of the Petition, as supported by evidence presented to this Court in the form of affidavits and relevant foreign statutes, this Court finds that the proceedings before the High Court in London and the Supreme Court of Bermuda constitute proper "foreign proceedings" "for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization." Therefore, the Petitions have been filed by a proper "foreign representative."
The only remaining inquiry is whether the presence of assets in this district is a requirement for this Court to exercise its jurisdiction.[3] Petitioners have asserted only the pendency of the Underlying Action, and not the presence of assets within this district, as the basis for their Petition.[4] Because the jurisdiction of this Court is granted by statute, the first inquiry must be whether Section 304, which forms the basis for this Court's jurisdiction, contemplates the hearing of an action not involving assets within the district in which the petition is filed. Section 304(b), which enumerates the relief able to be sought under that section, reads:
(b) Subject to the provisions of subsection (c) of this section, if a party in interest does not timely controvert the petition, or after trial, the court may 
(1) enjoin the commencement or continuation of 
(A) any action against 
(i) a debtor with respect to property involved in such foreign proceeding; or
(ii) such property; or
(B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;
(2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or
(3) order other appropriate relief.
11 U.S.C.A. § 304 (1991). This case does not involve an order to turn over property under subsection (b)(2). This action involves either subsection (b)(1)(B), regarding a request to "enjoin the commencement or continuation of . . . any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of" Petitioners' estate; or subsection (b)(3), a request to order "other appropriate relief." The Underlying Action is, by its nature, a continuation of a *126 judicial proceeding to create a lien against the estates of Petitioners. That is, the entry of a judgment in favor of the Plaintiff in the Underlying Action would be the first step in creating and enforcing a judicial lien against the assets of Petitioners, wherever located. Because Petitioners have already admitted their liquidated several liabilities under the insurance policy, the sole remaining legal object of the Underlying Action is to establish judgments under which the Plaintiff could collect the admitted policy amounts by enforcement actions against assets of the Petitioners. Section 304 contemplates enjoining this type of lawsuit.
Finally, Section 304(b)(3) authorizes the entry of any other relief appropriate and necessary within the purposes of Section 304 to respect foreign insolvency proceedings. Clearly, the presence of assets is not made a prerequisite to exercise of this last, broad equitable power.
Enjoining any legal action against Petitioners is within the broad power of this Court under the clear intent of Section 304. ("[T]he Court is free to broadly mold appropriate relief in near blank check fashion." In re Culmer, 25 B.R. 621 (Bankr. S.D.N.Y.1983).)
The cases cited to the Court which appear to include the presence of assets in the district in their jurisdictional analysis involved situations other than a simple request to enjoin the continuation of a lawsuit in the district. (See discussion in In re Metzeler, 78 B.R. 674 (Bankr.S.D.N.Y. 1987)). If the petition requested this Court to marshall Petitioners' assets, or to turn property over to foreign authorities, the analysis of the presence of assets would be appropriate; but this petition arises solely out of the pendency of the Underlying Action.
The petition may be viewed as an effort to obtain the same stay that would be automatic under Section 362 of the Bankruptcy Code, or that may be sought under Section 126(1) of the United Kingdom Insolvency Act 1986. Petitioners simply seek to avoid expending valuable resources to defend a collection action in the United States.
Indeed, to rule that jurisdiction is improper in this District in which no assets are present, as requested by the Plaintiff in the Underlying Action, would put Petitioners in the untenable position of being able to establish jurisdiction to stay the Underlying Action only in New York (where assets are present); while, pursuant to the venue provisions quoted above, being able to establish venue only in the Southern District of Florida. This Court will not so frustrate the purpose of Section 304, and finds jurisdiction for the Petition of Kingscroft, El Paso, Lime Street, and Mutual proper in this Court.
The parties shall confer and recommend to the Court a schedule for the presentation of further evidence necessary for a final determination on the Petition for Relief Ancillary to Foreign Proceedings, and shall present such to the Court not later than 60 days from the date of this Order. The clerk of the Court shall thereafter proceed to schedule a status conference between the parties in interest for the scheduling of such further presentation of evidence.
Accordingly, it is
ORDERED that the Respondent Cynthia Bates' Motion to Dismiss Petitioners Petition for Relief Ancillary to Foreign Proceedings is DENIED. It is
FURTHER ORDERED that the Motion of Petitioners to Dismiss "Answer, Affirmative Defenses and Counterclaim" of Cynthia Bates is GRANTED in part, and DENIED in part. The counterclaim is without merit in these proceedings and the motion is thereby GRANTED, in part, in that regard. With regard to the answer and affirmative defenses, the Petitioners' motion is DENIED. This case shall proceed as a contested matter and the Court will conduct a final evidentiary hearing thereon.
DONE and ORDERED.
NOTES
[1] The Plaintiff failed, presumably by error, to join Kingscroft. However, Kingscroft stands in a similar position as the other three Petitioners on the insurance policy under which the Plaintiff has sought relief. Kingscroft has joined in seeking relief under this Petition in anticipation of the Plaintiff's amendment of pleadings in the Underlying Action, and to conserve its and the Court's resources by obviating a later parallel filing on behalf of Kingscroft alone.
[2] Petitioners have submitted the sworn affidavits of United Kingdom counsel expert in bankruptcy matters, as well as of Mr. Borley, to this effect.
[3] Petitioners have not, by filing of their Petition, subjected themselves to general jurisdiction, but recognize that the Court may condition its relief on submission to jurisdiction for specified purposes. 11 U.S.C.A. § 306 (West 1991). In the Matter of Axona Int'l Credit & Commerce Ltd., 88 B.R. 597, 598 n. 1 (Bankr.S.D.N.Y.1988).
[4] Indeed, Petitioners have represented to this Court that Petitioners have no assets in the Southern District of Florida, and further that they hold assets in trust funds in the amounts of $1.5 million each (less than one half of one percent of Petitioners' total liabilities) in New York, currently being held in conservatorship under court order in New York by the New York Superintendent of Insurance.